UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DMC PLUMBING AND REMODELING, LLC,
DAVID CAMPBELL, and
HEATHER CAMPBELL,

        Plaintiffs,

v.

FOX NEWS NETWORK, LLC, NEW WORLD
COMMUNICATIONS OF DETROIT, INC.,
d/b/a WJBK-TV, CITY OF DETROIT,
STEVEN DOLUNT, CHARLES FLANAGAN,
JULANEY JONES, WJBK LICENSE, INC.,
WJBK-TV, INC., ANDREA ISOM, and
JOHN DOE,

        Defendants.
_____/

Case No. 12-cv-12867

Paul D. Borman
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. No. 18)

The Court has before it Defendants Fox News Network, LLC; WJBK License, Inc.; New World Communications of Detroit, Inc.[1]; WJBK-TV, Inc.; and Andrea Isom's (the "WJBK Defendants")[2] Motion to Dismiss, filed on August 9, 2012. (Dkt. No. 13.) Plaintiffs DMC Plumbing and Remodeling, Inc., David Campbell, and Heather Campbell ("Plaintiffs"), filed the Complaint

---

[1] New World Communications of Detroit, Inc., is a wholly owned subsidiary of Fox Television Stations, Inc., not the Fox News Network, LLC. It therefore appears that Defendant Fox News Network, LLC was erroneously named in the Complaint.

[2] Defendants assert that Defendant WJBK Licensee, Inc., and WJBK-TV, Inc., were erroneously named in the Complaint, because they are not corporate entities. (Defs.' Mot. 1, n. 1.) Plaintiffs do not address this assertion in their Response.

1

in this matter on March 30, 2012, in state court, against the WJKB Defendants as well as the City of Detroit, Officer Steve Dolunt, Officer Charles Flanagan, Officer Julaney Jones, and other unnamed Defendants. The Complaint alleges the following 14 Counts:

> Count I: Defamation;
> Count II: Interference with Advantageous Contractual Relations;
> Count III: Interference with Prospective Business Advantage;
> Count IV: Malicious Prosecution;
> Count V: Intentional Infliction of Emotional Distress;
> Count VI: Gross Negligence;
> Count VII: Negligence;
> Count VIII: Violation of the Fourth Amendment, 42 U.S.C. § 1983 Unreasonable Seizure;
> Count IX: Violation of the Fourth Amendment, 42 U.S.C. § 1983 Malicious Prosecution;
> Count X: 42 U.S.C. § 1983 Fourteenth Amendment Procedural Due Process Violations;
> Count XI: 42 U.S.C. § 1983 Violation of the Fourteenth Amendment Substantive Due Process;
> Count XII: 42 U.S.C. § 1983 Violation of the First Amendment;
> Count XIII: City of Detroit's Constitutional Violations; and
> Count XIV: Loss of Consortium as to Plaintiff Heather Campbell.

(Compl. 7-21) Defendants filed a Notice of Removal on June 28, 2012.[3] (Dkt. No. 1.)

On September 7, 2012, Plaintiffs filed a Response to the WJBK Defendants' Motion. (Dkt. No. 18.) On September 11, 2012, the WJBK Defendants filed a Reply. (Dkt. No. 19.) On October 10, 2012, the WJBK Defendants filed a Supplemental Brief in Support of their Motion to Dismiss. (Dkt. No. 26.) The Court held a hearing on October 19, 2012.

---

[3] The WJBK Defendants filed the Notice of Removal in this action. Defendant City of Detroit joined in the removal on July 3, 2012. (Dkt. No. 2.) Although there is no conspiracy claim alleged in the Complaint, the WJBK Defendants asserted that federal question jurisdiction existed in this Court based on Plaintiffs' claims brought under 42 U.S.C. § 1983. The WJBK Defendants, as private entities, are generally not liable under § 1983. However, Plaintiffs' counsel conceded at the hearing on this matter that the Complaint alleges that the WJBK Defendants were acting in concert with Defendant City of Detroit, and that they should also be liable for § 1983 claims. The WJBK Defendants' removal based on federal question jurisdiction was therefore proper.

For the reasons stated below, the Court will GRANT the WJBK Defendants' Motion.

## I. BACKGROUND

The allegations in the Complaint are assumed to be true for purposes of the instant motion to dismiss. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

In early 2011, Plaintiff DMC Plumbing and Remodeling, Inc. ("DMC") performed services on various properties owned by Five Brothers Mortgage Company Services and Securing Inc. ("Five Brothers"). These services included demolition of, and removing debris from, the Five Brothers properties. Plaintiff DMC was responsible for hauling over 100,000 pounds of debris from the properties to the dump in the first three months of 2011.

On March 31, 2011, Plaintiff DMC dumped branches at a property located at 19721 Joann Street in Detroit, Michigan, (the "Joann Street property") which was owned by Five Brothers. Plaintiff DMC alleges that a nearby dump had refused to accept the branches, and Plaintiff DMC planned to temporarily store the branches at the Joann Street property and take them to a burn pit in Waterford, Michigan, later the same day.

However, while Plaintiff DMC's employees were unloading the branches at the Joann Street property, Defendant Julaney Jones, a Detroit Police Officer, arrived and accused Plaintiff DMC's employees of illegal dumping and blight violations. Defendant Jones then seized and impounded Plaintiff DMC's work vehicles.

Plaintiffs allege that Defendant City of Detroit and unnamed Detroit Police Department officers informed the WJBK Defendants that Plaintiff DMC was illegally dumping and causing blight violations in the city. Plaintiffs claim that Defendants Charles Flanagan, Julaney Jones, Steve Dolunt, and other Detroit Police officers, then misdirected the WJBK Defendants to a property nearby the Joann Street property, which contained various piles of debris that had not been dumped

3

there by Plaintiff DMC. The WJBK Defendants then video recorded the debris on this property as part of a televised news story on illegal dumping in the City of Detroit.

Plaintiffs allege that representatives from the WJBK Defendants visited Plaintiff David Campbell, who showed the WJBK Defendants the burn pit with the pile of branches that had been removed from the Joann Street property.

On April 1, 2011, the WJBK Defendants broadcast a news story claiming that the debris on the property that Defendants Flanagan, Jones, and Dolunt had shown them had been left there by Plaintiff DMC. Plaintiffs allege that the news story also erroneously reported that Plaintiff DMC was known for illegal dumping activities in the City of Detroit. Plaintiffs further allege that, sometime after the April 1, 2011 news broadcast, "[v]arious blight charges against [them] were dismissed." (Compl. ¶ 48.) However, on May 12, 2011, Plaintiffs' employee, Jayson Andrew Blevins, was found responsible and fined $1,000 for illegal dumping at 19721 Joann Street in Detroit on March 31, 2011. (Defs.' Supp. Mem., Ex. A, Order of Judgment.)

Plaintiffs assert that they have been defamed and lost business revenue as a result of allegedly false statements contained in the news story broadcast by the WJBK Defendants. Now before the Court is the WJBK Defendants' Motion to Dismiss Plaintiffs' defamation and other tort claims based on the April 1, 2011 news broadcast, brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).

### III. STANDARD OF REVIEW

The same standard of review applies to motions for judgment on the pleadings under Rule 12(c) and motions claiming failure to state a claim pursuant to Rule 12(b)(6). *Tucker*, 539 F.3d at 549. The Court takes all well-pleaded allegations as true, and the motions are "appropriately granted when no material issue of fact exists and the party making the motion is entitled to

4

judgment as a matter of law." *Id.* (internal quotations and citation omitted). Put another way, the motions test the complaint for sufficient factual matter, which the Court takes as true and construes in a light most favorable to the plaintiff, to state a plausible claim for relief. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

## IV. ANALYSIS

### A. Defendants' Request for Early Summary Judgment

As an initial matter, the Court notes that the WJBK Defendants cite case law in their Motion supporting the Court's consideration of early summary judgment motions in First Amendment cases.[4] (Defs.' Mot. 4-5.) *See Nichols v. Moore*, 396 F. Supp. 2d 783, 787 (E.D. Mich. 2005) (noting that "[s]ummary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern."). However, Defendants do not rely on Federal Rule of Civil Procedure 56(c), and in fact argue that the Court can consider the evidence presented "without converting this motion to one for summary judgment under Rule 56." (Defs.' Mot. 7.)

As noted *supra*, the Court construes the WJBK Defendants' Motion as one brought pursuant to Rules 12(b)(6) and 12(c). Accordingly, the Court will limit its consideration to the

---

[4]The WJBK Defendants rely primarily on state law "summary disposition" cases brought pursuant to Michigan Court Rule 2.116(C)(10). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Comerica Bank v. Cohen*, 291 Mich. App. 40, 45 (2010). In reviewing these motions, Michigan state courts apply the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 56: "Summary disposition is appropriate if there is *no genuine issue regarding any material fact* and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Latham v. Barton Malow Co.*, 480 Mich. 105, 111 (2008)) (emphasis added). *See also Herendeen v. Mich. State Police*, 39 F. Supp. 2d 899, 902 n. 1 (W.D. Mich. 1999) (noting that "[s]ummary disposition is the equivalent of summary judgment under the Federal Rules of Civil Procedure.").

5

pleadings and materials permitted under those rules, and will apply the legal standards under those rules.

### B. Defendants' Motion for Judgment on the Pleadings/Failure to State a Claim

The WJBK Defendants argue that any alleged false statements made during the April 1, 2011 news broadcast are protected under Michigan's statutory "fair reports" privilege, which provides, in pertinent part, as follows:

> Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report.

Mich. Comp. Laws § 600.2911(3).

*1. Consideration of the April 1, 2011 News Broadcast*

The WJBK Defendants assert that the Court may consider a DVD copy of the April 1, 2011 news broadcast. (Defs.' Mot. Ex. A, News Broadcast.)

In reviewing a motion brought pursuant to Rules 12(b)(6) and/or 12(c), the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Although the Complaint did not include the DVD as an exhibit, the Complaint refers to the April 1, 2011 news broadcast, and the broadcast is central to Plaintiffs' claims for defamation. (Compl. ¶¶ 38-40.) Accordingly, the Court will consider it in ruling on Defendants' motion to dismiss.

*2. Applicability of Mich. Comp. Laws § 600.2911(3)*

6

The WJBK Defendants argue that any allegedly false statements made in the April 1, 2011 news broadcast are attributable to official statements of City of Detroit officials, and are thus covered under the fair reports privilege.

Michigan courts have held that "under the plain language of § 2911(3), the privilege encompasses newspaper articles based upon police reports of criminal incidents." *Northland Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*, 213 Mich. App. 317, 326 (1995). Courts have interpreted the privilege broadly, extending it to more than just official police statements. *See id.* at 327 (noting "we believe the statutory privilege was drafted to incorporate much more than press releases.").

The allegedly defamatory statements regarding Plaintiff DMC are attributed to police statements in the April 1, 2011 broadcast. In the news report, Defendant Andrea Isom states as follows:

- "Detroit police say the two guys were employees of DMC Plumbing and Remodeling in Waterford." (News Broadcast at 01:53.)
- "According to cops, the two workers were ticketed and their trucks towed away." (News Broadcast at 01:59.)
- "You know, police asked those guys why they decided to dump that stuff in Detroit, and they said because their boss told them to." (News Broadcast at 02:38.)

Plaintiffs argue that § 2911(3) should not apply to these statements because they were not attributed to any public record or written official police report.

Although Defendant Isom's above statements were not based on an official report or record available to the public, they are covered by the fair reports privilege. In *McCracken v. Evening News Association*, 3 Mich. App. 32 (1966), the plaintiff argued that "information gathered by defendant's reporter, and thereafter published by defendant, was obtained from informal statements made by the assistant prosecutor . . . prior to the issuance of the warrant[,]"

7

and was therefore not covered by § 2911(3), because it "was not gathered from a public and official proceeding . . . ." *Id.* at 38. The Michigan Court of Appeals disagreed, stating as follows:

> The fact that the reporter herein relied on the word of another as to the nature of the complaint and warrant is immaterial. The statute does not command the reporter to obtain his information from the official court records.

*Id. See also Nichols*, 396 F. Supp. 2d at 789 (quoting *McCracken* and noting "that Defendant is not required to consult the public record before making his statements, it is sufficient that the public record is consistent with them.").

Accordingly, the statements in the April 1, 2011 news broadcast do fit within the statutory privilege provided under § 2911(3).

*3. Substantial Truth Doctrine*

In evaluating whether a news publication is immune under § 2911(3), the Court must determine "[i]f the gist of [the] article is substantially accurate . . . ." *Butcher v. S.E.M. Newspapers, Inc.*, 190 Mich. App. 309, 312 (1991). Whether a privilege renders a defendant immune from liability is a question of law determined by the Court. *Northland Wheels*, 213 Mich. App. at 324.

In *Northland Wheels*, the plaintiff sued the defendant newspaper for libel after the newspaper published an article entitled "Teen shot outside roller rink was caught in others' dispute." *Id.* at 319. The article reported that a teenager died, and another teenager was wounded, as a result of a drive-by shooting "outside of a northwest Detroit roller skating rink[.]" *Id.* The plaintiff alleged that the article was not a fair and accurate report of the police department's news release. *Id.* at 320. The trial court disagreed, finding "that although the shooting did not occur in front of plaintiff's business, the police records supported the fact that

the shooting victims were congregating in plaintiff's parking lot as they left the skating rink." *Id.* at 321-22. The trial court also noted that a witness who was quoted in the newspaper article "focused on plaintiff's rink." *Id.* at 322.

The Michigan Court of Appeals affirmed, holding that "plaintiff has failed to establish material falsity under the substantial truth doctrine." *Northland Wheels*, 213 Mich. App. at 327. The appeals court further stated as follows:

> Although defendants published articles that stated that as the result of an argument that began inside plaintiff's skating rink, a teenager was slain in front of plaintiff's skating rink as patrons were leaving the rink, we do not believe that a reader would be affected by this saddening news any differently had the article specified that (1) the victims were shot outside the Woodland Arms Apartment, which is located at 22045 West Eight Mile, (2) when the shooting occurred, the victims and other teens were leaving the parking lot in front of plaintiff's skating rink, located two hundred yards away at 22311 West Eight Mile, and (3) as plaintiff alleges, nothing occurred inside the rink that contributed to the shooting. These alleged inaccuracies are immaterial under the substantial truth doctrine because the literal truth produces the same effect in the mind of the reader. The literal truth is that another teenager senselessly was murdered in a Detroit parking lot during a drive-by shooting. Exactly where, when, or why is irrelevant to the "gist" of the story.

*Id.* at 327-28.

The instant case fits within the *Northland Wheels* analysis. Police records and statements on April 1, 2011, would have indicated that Plaintiff DMC was fined for illegal dumping and blight violations, and that its trucks were impounded by City of Detroit police. Indeed, the May 12, 2011 Order of Judgment fining Plaintiffs' employee for illegal dumping, while not in the public record at the time of the broadcast at issue, still undercuts Plaintiffs' argument that the illegal dumping charges referenced in the April 1, 2011 broadcast were materially false.

Plaintiffs assert that the news broadcast is not substantially true because (1) it falsely claims that Plaintiff DMC was the cause of the illegal dumping shown in the video footage; (2)

the broadcast shows Plaintiff DMC's truck in an impound lot "with a load still in it," falsely implying that Plaintiffs were going to dump that load illegally (News Broadcast at 02:12), and (3) Defendant Adrea Isom states that she talked to "the boss" at Plaintiff DMC, Plaintiff David Campbell, but never reported what he said – that he was only temporarily storing branches at the Joann Street property (News Broadcast at 02:45). However, the fact that Plaintiff DMC was ticketed for illegally dumping branches, rather than for the debris shown in the news broadcast, "is an inaccuracy that does not alter the complexion of the charge and would have no different effect on the reader than that which the literal truth would produce . . . ." *Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409, 414 (1987).

Plaintiffs also argue that the broadcast falsely states that Plaintiff DMC had been illegally dumping in the City of Detroit "for quite some time." (News Broadcast at 00:25). This comment was made by the WJBK Defendants' female news anchor, who Plaintiffs have not named as a defendant, during the transition to Defendant Andrea Isom's news report. The Court finds that this statement is a minor inaccuracy that does not, by itself, alter the substantial truth of the April 1, 2011 news broadcast. In *Rouch v. Enquirer & News of Battle Creek Michigan*, 440 Mich. 238 (1992), the Michigan Supreme Court noted that "[i]t is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the charge, and it is unnecessary to repeat and justify every word of the alleged defamatory matter, so long as the substance of the libelous charge be justified . . . ." *Id.* at 259 (citation omitted). Furthermore, a complaining witness featured in the April 1, 2011 news broadcast stated that he had previously witnessed illegal dumping in the area (News Broadcast at 01:15), and that it was "about time" somebody was ticketed. (News Broadcast at 02:23.) Thus, there was some basis for the news anchor's

statement. *See McCracken*, 3 Mich. App. at 38 (holding that "[t]he fact that the reporter herein relied on the word of another as to the nature of the complaint and warrant is immaterial.").

Accordingly, the Court finds that the April 1, 2011 news broadcast is a "substantially true" representation of the police records and statements surrounding Plaintiff DMC's charges of illegal dumping and blight violations at the time of the broadcast. Taking the allegations in the Complaint as true and viewing them in a light most favorable to Plaintiffs, the WJBK Defendants are thus entitled to judgment as a matter of law, because the April 1, 2011 news broadcast is protected under Michigan's fair reports privilege.

### C. Claims for Tortious Interference and Emotional Distress

The WJBK Defendants argue that Plaintiffs' claims based on tortious interference and emotional distress must fail because they are merely alternative theories contingent on the defamation claim. The Court agrees.

The basis for all liability against the WJBK Defendants, as alleged in the Complaint, arises out of the allegedly false and defamatory statements and depictions contained in the April 1, 2011 news broadcast. However, if this broadcast is covered under the fair reports privilege, as discussed *supra*, then Plaintiffs' claims for tortious interference and emotional distress must also be dismissed. *See Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 401 (1995) ("As with defamation actions, where the conduct allegedly causing the business interference is a defendant's utterance of negative statements concerning a plaintiff, privileged speech is a defense."); *Nichols*, 396 F. Supp. 2d at 798 ("The Court finds that Plaintiff's . . . Emotional Distress claims are subject to the same First Amendment limitations as Plaintiff's defamation claim.").

In addition, although not raised by the WJBK Defendants, the same reasoning applies to Plaintiffs' negligence claim (Count VII). *See Royal Palace Homes*, 197 Mich. App. 48, 53 (noting that "[l]iability may not be imposed on a media defendant for facts about public affairs it publishes accurately and without material omissions.").

Plaintiffs' tortious interference, emotional distress and negligence claims against the WJBK Defendants will therefore be dismissed.

**D. Request to Amend**

At the end of their Response, Plaintiffs argue that they should be given leave to amend the Complaint pursuant to Rule 15(a). Plaintiffs have not filed a separate motion pursuant to Rule 15(a), nor have they attached a proposed amended Complaint pursuant to Local Rule 15.1.

Because the allegedly defamatory statements in the April 1, 2011 news broadcast are substantially true and covered by Michigan's fair reports privilege, Plaintiffs cannot allege any facts that would support a claim against the WJBK Defendants. Plaintiffs' request to amend will therefore be denied as futile. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." (citation omitted)).

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** the WJBK Defendants' Motion to Dismiss. The remaining Defendants are the City of Detroit, Steve Dolunt, Charles Flanagan, Julaney Jones, and the other Unnamed Defendants.

**IT IS SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 11-26-12